Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,970-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BARBARA COLEMAN                                    Plaintiff-Appellant

versus

OCHSNER LSU HEALTH                                 Defendants-Appellees
MONROE AND CANDACE
CROW

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2024-2361

Honorable Frederick Douglass Jones, Judge

* * * * *

DIANNE HILL                                        Counsel for Appellant


PETTIETTE, ARMAND, DUNKELMAN,                      Counsel for Appellees,
WOODLEY & CROMWELL, LLP                            BRFHH Monroe, LLC
By: Lawrence Wayne Pettiette, Jr.                  d/b/a Ochsner LSU
    Joseph Samuel Woodley                          Health Monroe, and
                                                   Candace Crow

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**STONE, J.**

This civil appeal arises from the Fourth Judicial District Court, the Honorable Frederick Jones presiding. Barbara Coleman is the plaintiff-appellant ("the plaintiff") in this medical malpractice action. The defendant-appellees are Ochsner LSU Health Monroe ("LSU") and nurse practitioner Candace Crow ("Crow").

On or about February 11, 2022, the plaintiff presented at LSU with vaginitis and a yeast infection. Crow prescribed Metformin, which the plaintiff says made her condition worse, causing "severe vaginal rash, painful blistering" – which culminated in an emergency room visit on March 13, 2022.[1] The plaintiff asserts that defendant Crow prescribed Metformin: (1) despite the plaintiff advising her that Metformin had caused the plaintiff gastric problems in the past; (2) despite plaintiff's dietary restrictions and past gallbladder surgery; and (3) instead of referring the plaintiff to a physician for treatment. The plaintiff asserts that Crow's decision was due in part to Crow's ignorance of the patient records and/or LSU's deficiency in creating and maintaining such records.

The medical review panel opinion ("MRPO") -- which was rendered May 9, 2024 -- unanimously found no breach of the standard of care. Plaintiff filed suit on July 1, 2024, naming Crow and LSU as defendants. Thereafter, the defendants filed a motion for summary judgment ("MSJ") on October 30, 2024, (but agreed to continue the original hearing to allow plaintiff additional time for discovery). The defendants asserted that the plaintiff had no evidence of a breach of the standard of care or causation,

---

[1] The dates of treatment mentioned in the body text are specifically alleged in the petition.

introduced the MRPO, and argued applicability of the gross negligence burden because the treatment occurred during the COVID emergency and thus was subject to the Louisiana Health Emergency Powers Act (the "LHEPA"). The plaintiff did not introduce any evidence of breach or causation in opposition; she merely introduced her own affidavit narrating her medical case history and a list of questions she propounded to the medical review panel. Nor did she object to the admissibility of the MRPO. On August 13, 2025, the trial court heard the MSJ and orally granted summary judgment in favor of the defendants. That oral ruling was reduced to written judgment the same day, dismissing the plaintiff's claims with prejudice as to both defendants. Thereafter, the trial court denied the plaintiff's motion for new trial.

## ARGUMENTS

On appeal, the plaintiff attacks the MRPO as improper for not defining the standard of care and for making a credibility determination in finding that no breach occurred. The plaintiff also argues new trial should have been granted because she did not depose defendant Crow until two weeks before the hearing on the MSJ – and blamed this on Crow's refusal to do the deposition during the workday. (Notably, the plaintiff never requested a subpoena to compel the deposition and does not specify at all what Crow said in the deposition that plaintiff thinks would defeat summary judgment.)

# LAW

"After an opportunity for adequate discovery,[2] a motion for summary judgment shall be granted if the summary judgment evidence shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791, 814.

"A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate." *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764. Furthermore, "[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13, 20-21. Thus, when the valid summary judgment testimony of one witness contradicts that of another, there is a genuine issue; to choose between them is to make a credibility determination, which is the function of a trial, not summary judgment.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse

---

[2] La. C.C.P. art. 967(C) provides the mechanism by which an opposing party may assert inadequate time for discovery: counsel must introduce an affidavit explaining why the opportunity has been inadequate.

3

party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Therefore, to avoid summary judgment, a nonmoving party who would bear the burden of proof at trial on the factual issues concerned in the MSJ must introduce prima facie evidence of such facts. *McGee v. Ashford Place Apartments, LLC*, 54,795 (La. App. 2 Cir. 11/16/22), 351 So. 3d 899; *Cyprien v. Bd. of Sup'rs ex rel. Univ. of Louisiana Sys.*, 08-1067 (La. 1/21/09), 5 So. 3d 862, 866.

La. R.S. 9:2794(A) sets forth the essential elements of a medical malpractice action; they follow the traditional formulation of negligence – duty, breach, causation, and injury:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians...licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances...
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

*Brown v. LSU Health Scis. Ctr.- Shreveport Through Bd. of Supervisors of Louisiana State Univ. Agric. & Mech. Coll.*, 56,195 (La. App. 2 Cir. 4/9/25), 409 So. 3d 471. At trial, a medical malpractice plaintiff would bear the burden of proving these elements. *Id.* The standard of care cannot be proved without expert medical evidence. *Id.*; *Pfiffner v. Correa*, 94-0924 (La. 10/17/94), 643 So. 2d 1228, 1230.

4

Additionally, healthcare providers are immune from medical malpractice claims (1) arising during the COVID emergency period, and (2) not involving *gross negligence*. La. R.S. 29:771(B)(2)(c)(i), which is part of the LHEPA, states: "During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct." That emergency period was from March 11, 2020, to March 16, 2022.[3] (The plaintiff sues for treatment received on February 11, 2022).

Gross negligence is defined as:

> Gross negligence has been defined as the want of even slight care and diligence and the want of that diligence which even careless men are accustomed to exercise. Gross negligence has also been termed the entire absence of care and the utter disregard of the of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care. There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning…Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence. (Internal quotation marks and citations omitted.)

*Rabalais v. Nash,* 06-0999 (La. 3/9/07), 952 So. 2d 653, 658. However, the protection of this statute is an affirmative defense and must be pled as such (or supported by the allegations of the petition) to be judicially cognizable. *Ellis v. Mai*, 56,074 (La. App. 2 Cir. 2/26/25), 408 So. 3d 416.

---

[3] The declaration of emergency began per proclamation 25 JBE 2020 (initial emergency declaration), 7 JBE 2022 (relevant extension), and 17 JBE 2022 (last extension).

## ANALYSIS

The plaintiff did not introduce any summary judgment evidence whatsoever. The defense introduced the MRPO, which found no breach of the standard of care. The plaintiff has failed to carry her burden under La. C.C.P. art. 966(D)(1). Likewise, plaintiff's counsel failed to introduce an affidavit explaining why more time for discovery was needed and why there had been an inadequate opportunity for discovery. La. C.C.P. art. 967(C).

The plaintiff's objections to the MRPO, even if valid, make no difference. At most, they could make the MRPO inadmissible, but not in this case because the MRPO opinion was admitted without objection. La. C.C.P. art. 966(D)(2); *McGlothlin v. Christus St. Patrick Hosp.,* 10-2775 (La. 7/1/11), 65 So. 3d 1218. Regardless, the plaintiff failed to carry her burden under La. C.C.P. art. 966(D)(1) with or without admission of the MRPO — and with or without application of the LHEPA statute. Partial immunity under the LHEPA statute is applicable but such is completely unnecessary to the defendants' entitlement to summary judgment. It merely creates a "belt *and* suspenders" effect. Clearly, the plaintiff — by failing to introduce any evidence of breach of the standard of care or causation— failed to present prima facie proof of even ordinary negligence, much less gross negligence.

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is **AFFIRMED.** Because the plaintiff has been granted pauper status, costs of this appeal and expenses in the lower court are assessed in accordance with La. C.C.P. art. 5188.

**AFFIRMED.**